IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JUAN LUIS LEONOR, | ) | |
| | ) | |
| Plaintiff, | ) | 4:04cv3330 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| FRED BRITTEN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on filing no. 68, the Motion for Summary Judgment filed by the defendants, Fred Britten, et al. The plaintiff, Juan Luis Leonor, a prisoner in the custody of the Nebraska Department of Correctional Services ("DCS"), asserts civil rights claims pursuant to 42 U.S.C. § 1983, alleging that the defendants, employees of DCS, violated his right of access to the courts. The plaintiff seeks $13 million, release from prison and injunctive relief because the defendants denied him the time he sought in the prison law library at the Tecumseh State Correctional Institution ("TSCI"), thereby impairing the plaintiff's ability to litigate matters in his state appellate and postconviction proceedings.

To state a claim for denial of access to the courts, a plaintiff must allege that the defendant(s) hindered his efforts to pursue a non-frivolous legal claim and that the plaintiff suffered some actual concrete injury as a result. Lewis v. Casey, 518 U.S. 343, 350-54 (1996). In Christopher v. Harbury, 536 U.S. 403, 412-15 (2002), the U.S. Supreme Court explained that an "access to the courts claim" may involve a forward-looking effort to remove an obstacle to prospective litigation or may involve a look backward to vindicate the obstruction or hindrance of a plaintiff's opportunity to obtain judicial relief. See Gibson v. Superintendent of NJ Dept. of Law and Public Safety-Division of State Police, 411 F.3d 427, 441-42 (3d Cir. 2005):

> The Supreme Court has recognized that a constitutional right to effectively use the courts has been found in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses. See Christopher v. Harbury, 536 U.S.

1

403, 415 n. 12 ... (2002). Asserting this right, wherever it is grounded, a plaintiff can seek relief for "loss or inadequate settlement of a meritorious case, ... the loss of an opportunity to sue, ... or the loss of an opportunity to seek some particular order of relief." Id. at 414 ....

Denial of access claims generally fall into two categories. Id. at 412-13.... The first type of claim alleges that some official action is currently preventing the plaintiff from filing a suit at the present time. Id. at 413 .... The object of such a claim is to remove the barrier so that the plaintiff can pursue the separate claim for relief. Id. In these cases, the constitutional deprivation is demonstrated by the very fact that the plaintiff cannot presently pursue his underlying case until the frustrating condition is removed.

In the second category of cases, the plaintiff looks backward and alleges that some past wrongful conduct influenced a litigation opportunity such that the litigation "ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." Id. at 414 ... (footnotes omitted).

The plaintiff's claim is of the "backward-looking" variety. See Christopher v. Harbury, 536 U.S. at 413-15:

The second category covers claims not in aid of a class of suits yet to be litigated, but of specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future. The official acts claimed to have denied access may allegedly have caused the loss or inadequate settlement of a meritorious case, e.g., Foster v. Lake Jackson, 28 F.3d 425, 429 (C.A.5 1994); Bell v. Milwaukee, 746 F.2d 1205, 1261 (C.A.7 1984) ("[T]he cover-up and resistance of the investigating police officers rendered hollow [the plaintiff's] right to seek redress"), the loss of an opportunity to sue, e.g., Swekel v. River Rouge, 119 F.3d 1259, 1261 (C.A.6 1997) (police coverup extended throughout "time to file suit ... under ... statute of limitations"), or the loss of an opportunity to seek some particular order of relief, as Harbury alleges here. These cases do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable. The ultimate object of these sorts of access claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future.

Id. at 413-14.

While the circumstances thus vary, the ultimate justification for recognizing each kind of claim is the same. Whether an access claim turns

2

> on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong.  However unsettled the basis of the constitutional right of access to courts, our cases rest on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court.  We indicated as much in our most recent case on denial of access, Lewis v. Casey, *supra*, where we noted that even in forward-looking prisoner class actions to remove roadblocks to future litigation, the named plaintiff must identify a "nonfrivolous," "arguable" underlying claim, id., at 353, and n. 3 ..., and we have been given no reason to treat backward-looking access claims any differently in this respect. It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation. It follows, too, that when the access claim (like this one) looks backward, the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought.

Id. at 414-15.

"[I]n Lewis v. Casey, 518 U.S. 343, 351 ... (1996), quoting Bounds v. Smith, 430 U.S. 817, 825 ... (1977), the [Supreme] Court confirmed that inmates have a constitutional right of access to the courts that obligates prison officials to provide some means, such as a prison law library or a legal assistance program, 'for ensuring "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts."'" Bear v. Kautzky, 305 F.3d 802, 804 (8th Cir. 2002).  "In Bounds and Lewis the Supreme Court emphasized that there is no one prescribed method of ensuring inmate access to the courts. A prison system may experiment with prison libraries, jailhouse lawyers, private lawyers on contract with the prison, or some combination of these and other devices, so long as there is no actual harm to the access rights of particular inmates." Id. at 806.   "[I]t has been noted that '[t]he choice among various methods of guaranteeing access to the courts lies with prison administrators, not inmates or the courts.'" Peoples v. CCA Detention Centers, 422 F.3d 1090, 1107 (10th Cir. 2005) (citation omitted).

In October of 2002, the plaintiff was placed in segregation at TSCI, pending classification to protective custody. During that period, legal aide Tyrrell assisted the plaintiff in filing a notice of appeal from the denial of the plaintiff's motion for a new trial.

3

However, once the plaintiff was assigned to the protective custody housing unit, he could use only the library in that unit and only the legal aide assigned to protective custody. The law library in the protective custody unit serves 20 to 30 inmates, of whom 10 need the facilities at any one time, according to the plaintiff, but only one inmate may use the library at any particular time and only when the legal aide is present. As a result, inmates in protective custody are assigned to the library for one hour per week on a weekend day, unless a request for additional time is granted.

The plaintiff states that during the 10-month period from January to October of 2003, he received approximately 30 hours of research time in the law library (filing no. 80 at 11-12).[1] On October 10, 2003, the plaintiff transferred from TSCI to the Nebraska State Penitentiary ("NSP"). According to the plaintiff, the 30 hours allotted to him did not suffice to enable him to present his constitutional claims to the courts, and he sustained the following actual injuries. On June 2, 2003, the plaintiff had to dismiss his appeals (filing no. 13 at 11 *et seq.*; filing no. 35 at 3; filing no. 80 at 16 *et seq.*) because the defendants had denied most of his requests for additional time in the TSCI law library or had delayed their responses to his requests for additional library time. The plaintiff also contends (filing no. 80 at 6 *et seq.*) that his postconviction motion filed on August 28, 2003 omitted some of the facts necessary to obtain an evidentiary hearing on the issues of prosecutorial misconduct and ineffective assistance of counsel, whereas he could have cured those deficiencies if he had received the additional time he requested to use the prison law library for legal research or the assistance of legal aide Tyrrell who was familiar with the 1,000-page record of the plaintiff's cases. Finally, the plaintiff maintains (filing no. 13 at 12, 14-16; filing no. 80 at 28 *et seq.*) that his presently pending habeas corpus petition in this court may contain some procedurally defaulted claims because the plaintiff received inadequate legal resources at TSCI to exhaust his claims properly on state postconviction review.

---

[1] In considering the defendants' motion for summary judgment, the court views the evidence in the light most favorable to the plaintiff, as the nonmoving party, and draws all justifiable inferences in favor of the plaintiff. Putman v. Unity Health System, 348 F.3d 732, 733 (8th Cir. 2003).

### Release from Prison

Insofar as the plaintiff seeks release from imprisonment, release from custody is not among the available remedies in a civil rights case. In federal court, a state prisoner may seek release from state custody only in a habeas corpus proceeding.

### Injunctive Relief

Any claim the plaintiff may have had for injunctive relief against the defendants to improve conditions at TSCI became moot when he transferred to the NSP. "A claim for equitable relief is moot 'absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again.'" Randolph v. Rodgers, 170 F.3d 850, 856-57 (8th Cir. 1999). When, as in this case, "an inmate has been transferred to another institution, his claim for injunctive relief against the warden of the first prison to improve the former prison's conditions is moot." Id. at 857, *citing* Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985).

### Damages

**All Defendants - Emotional Distress**

The Prison Litigation Reform Act ("PLRA"), which applies to cases brought by prisoners, prevents the plaintiff from recovering any damages for mental and emotional suffering attributable to the defendants' conduct, as the plaintiff incurred no physical injury. See 42 U.S.C. § 1997e(e): "Limitation on recovery. No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

**Official Capacity Defendants - Sovereign Immunity**

As I previously pointed out in filing no. 9 at 4, any claim for damages by the plaintiff against the defendants in their official capacity must be dismissed. The Eleventh Amendment to the United States Constitution bars claims for monetary relief by private parties against a state, a state agency or an employee of a state in his or her official capacity. See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974) ("a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."). The Eleventh Amendment prevents the plaintiff from recovering damages pursuant to 42 U.S.C. § 1983 from state employees in their

official capacity because a suit against a public employee in his or her official capacity is considered a suit against the public employer. Kentucky v. Graham, 473 U.S. 159, 165 (1985). As the defendants are employees of the State of Nebraska, the State's sovereign immunity bars the plaintiff's claims for monetary relief from the State's employees in their official capacity.

**Individual Capacity Defendants** - **Qualified Immunity**

The defendants claim qualified immunity for the plaintiff's damages claims against them in their individual capacity. A government official, sued for damages in his or her individual capacity pursuant to 42 U.S.C. § 1983, is entitled to qualified immunity unless the plaintiff shows that the official violated a "clearly established" federal statutory or constitutional right of the plaintiff. For a right to be considered "clearly established," the plaintiff must demonstrate that a reasonable person would have known: (a) of the plaintiff's right and (b) that the conduct at issue violated the plaintiff's right. See Anderson v. Creighton, 483 U.S. 635, 639-40 (1987): "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 640. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id. (citations omitted).

Qualified immunity is the norm. "[The plaintiff's] burden is not easily discharged: 'That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*.'" Foy v. Holston, 94 F.3d 1528, 1532 (11th Cir. 1996) (emphasis in original; citation omitted). "Stated another way, qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful 'in light of clearly established law and the information [that the defendant] possessed .... The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." ' " Smithson v. Aldrich, 235 F.3d 1058, 1061 (8th Cir. 2000).

As the threshold inquiry for a summary judgment motion based on qualified immunity, the court considers whether, taken in the light most favorable to the party

6

asserting the injury, the facts alleged show that the defendant's conduct violated a constitutional right. Brosseau v. Haugen, 125 S.Ct. 596, 598 (2004); Craighead v. Lee, 399 F.3d 954, 961 (8th Cir. 2005). If the plaintiff has sufficiently alleged the violation of a constitutional right, "the next inquiry 'is to ask whether the right was clearly established.'" Frye v. Kansas City Missouri Police Dept., 375 F.3d 785, 789 (8th Cir. 2004) (citation omitted).

As explained in Hope v. Pelzer, 536 U.S. 730 (2002), a government employee charged with the federal criminal offense of willfully and under color of law depriving a person of constitutional rights, under 18 U.S.C. § 242, is entitled to "fair warning" that the conduct in question would deprive the victim of a constitutional right. Id. at 739-40. The "fair warning" requirement of 18 U.S.C. § 242 is identical to the qualified immunity standard for a civil damages action under 42 U.S.C. § 1983. Id. at 740-41. Thus, the "salient question" is whether the state of the law when the defendant acted gave the defendant "fair warning" that his or her conduct was unconstitutional. Id. at 741. "If the law did not put the defendant on notice that his or her conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Saucier v. Katz, 533 U.S. 194, 202 (2001).

While 30 hours over 10 months is indeed a limited period for adequate legal research, particularly in light of the plaintiff's many requests for additional time and the notice he provided of his litigation deadlines, nevertheless, the law provides no clear guidance as to how much library time the Constitution requires. "As the [Supreme] Court has made clear, detainees are entitled to meaningful, but not total or unlimited, access to the courts." Peoples v. CCA Detention Centers, 422 F.3d 1090, 1107 (10th Cir. 2005), *citing* Bounds v. Smith, 430 U.S. 817, 823 (1977). No court has suggested that an inmate is entitled to whatever degree of access to a law library he wants to achieve a work product the litigant finds subjectively satisfactory.

The state of the law when the defendants acted did not give them "fair warning" that their conduct violated any of the plaintiff's constitutional rights. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001). If the access to legal research resources afforded the

7

plaintiff could be considered below an acceptable constitutional standard in this case, a reasonable official in the defendants' circumstances would not have known so. "Under the doctrine of qualified immunity, 'officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.'" Figg v. Schroeder, 312 F.3d 625, 636 (4th Cir. 2002) (citation omitted). The defendants in their individual capacity are shielded by qualified immunity from the plaintiff's claims for damages.

THEREFORE, IT IS ORDERED:

1. That, for the reasons set forth in this Memorandum and Order, the defendants' Motion for Summary Judgment (filing no. 68) is granted; and

2, That a separate judgment will be entered accordingly.

July 17, 2006. BY THE COURT:

s/ *Richard G. Kopf*
United States District Judge